**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| CHRISTOPHER BERG, | ) | |
| | ) | |
| Plaintiff, | ) | No.: 13-cv-00001 |
| | ) | |
| v. | ) | Judge Barbara B. Crabb |
| | ) | |
| VERIZON WIRELESS and DOES 1-10, | ) | |
| Inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**VERIZON'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, Cellco Partnership d/b/a Verizon Wireless (incorrectly sued as Verizon Wireless) ("Verizon"), by its attorney Elizabeth A. Thompson (Arnstein & Lehr LLP, *of counsel*), for its memorandum in support of its motion for summary judgment in its favor and against Plaintiff Christopher Berg ("Plaintiff") states as follows:

**INTRODUCTION**

Plaintiff, hoping to avoid paying a legitimate debt owed to Verizon, has brought a claim under the Telephone Consumer Protection Act ("TCPA") alleging that Verizon called him (in an effort to collect that debt) after he revoked consent to be contacted. However, as the evidence makes clear, Plaintiff did not revoke consent to be called until January 2, 2013, after which he admits he was no longer called. Nonetheless, Plaintiff seeks to recover statutory damages for phone calls made in December of 2012, well *before* his January 2, 2013 revocation of consent. Because Plaintiff consented to these calls—a fact which Plaintiff himself admits—Plaintiff is not entitled to recover any

damages under the TCPA. Therefore, Verizon is entitled to summary judgment in its favor.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

On July 29, 2009, Plaintiff Christopher Berg ("Plaintiff") activated cellular telephone service and signed a two-year agreement with Alltel Wireless. (Proposed Findings of Fact ¶ 4.) Thereafter, on October 17, 2009, Plaintiff's account was transferred to Verizon as part of Alltel's merger with Verizon. (Id.) On November 10, 2011, Plaintiff renewed his contract with Verizon, extending the term an additional twenty-four months. (Id. ¶ 5.) A year later, on November 14, 2012, Plaintiff ported his cellular telephone number to another carrier, thereby terminating his service contract with Verizon. (Id. ¶ 7.) At the time he did so, Plaintiff remained under contract with Verizon and was responsible for an early termination fee pursuant to this contract. (Id. ¶ 8.) Additionally, Plaintiff had an unpaid balance for previous months' service. (Id. ¶ 9.) In total, when Plaintiff terminated his service on November 14, 2012, he owed Verizon $479.76. (Id. ¶ 10.)

Because of his existing relationship with Verizon, Plaintiff consented to be called by Verizon on his cellular telephone number via an automated telephone dialing system ("ATDS"). (Id. ¶ 6.) Therefore, pursuant to this express consent, after Plaintiff terminated his service with Verizon and left unpaid $479.76 in charges, Verizon sought to collect the amounts owed to it and began calling Plaintiff on the cellular telephone number he provided in order to collect this debt. (Id. ¶ 12.) It was not until almost two months later, on January, 2, 2013, that Plaintiff orally revoked the consent he had given Verizon to call him on his cellular telephone using an ATDS. (Id. ¶ 15.) Significantly,

Plaintiff never requested that Verizon cease calling him using an ATDS prior to this date (Id.) nor did Plaintiff ever provide Verizon with a written revocation of consent. (Id. ¶ 36.) Nonethless, no calls were made after January 2, 2013, which is when Plaintiff purported to revoke consent to be called concerning the amounts owing to Verizon. (Id. ¶ 37.)

After his early termination on November 14, 2012, but before his revocation of consent on January 2, 2013, Plaintiff and Verizon's representatives had six (not the 393 he originally claimed) telephone conversations. (Id. ¶ 16.) Most of these conversations were initiated by Plaintiff. (Id. ¶ 14.) Each and every one of Plaintiff's conversations with Verizon or anyone on its behalf concerning his debt was recorded by Valentine and Kerbartas, Inc. ("VKI"), Verizon's third party collection agency, and kept in the ordinary course of VKI's regularly conducted business and it was the regular practice of VKI to make such records. (Id. ¶ 17.) These conversations occurred on December 10, 2012, December 11, 2012, December 12, 2012, December 13, 2012, and December 20, 2012. (Id. ¶ 19.) At no time during any of these conversations did Plaintiff state that he was revoking his consent to be called by Verizon using an ATDS and that he wished only to be contacted by United States mail or otherwise. (Id. ¶¶ 21-30.)

On January 2, 2013, Plaintiff revoked his consent to be reached via his cellular telephone. (Id. ¶ 31.) No calls were made by Verizon after that date. (Id. ¶ 37.) Rather, all of the calls complained of in Plaintiff's First Amended Complaint were made before his January 2, 2013 revocation of consent. (Id.)

## STANDARD FOR THIS MOTION

A motion for summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mira v. Nuclear Measurements Corp., 107 F.3d 466, 471 (7th Cir. 1997) (quoting Fed. R. Civ. Pro. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); Anderson v. Univ. of Wisconsin, 665 F. Supp. 1372, 1374 (W.D. Wis. 1987), *aff'd* 841 F.2d 737 (7th Cir. 1988). Though the party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact, once the movant has done so, the non-movant has the responsibility of going beyond the pleadings and setting forth specific facts demonstrating the existence of a genuine issue of fact for trial. Dowden v. Polymer Raymond, Inc., 966 F.2d 1206, 1208 (7th Cir. 1992).

If no reasonable jury could find for the party opposing the motion, it must be granted. Mira, 107 F.3d at 471. Summary judgment is not a dress rehearsal or a practice run, but is instead the moment when a party must show what evidence it has that would convince a jury to accept its version of the events. Felton v. Teel Plastics, Inc., 09-cv-180-BBC, 2010 WL 3396805 (W.D. Wis. Aug. 26, 2010). Summary judgment is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an essential element to its case on which it bears the burden of proof at trial. Indiana Funeral Directors Ins. Trust v. Trustmark Ins. Corp., 347 F.3d 652, 654 (7th Cir. 2003). When a defendant moves for summary judgment arguing that the plaintiff lacks evidence of an essential element of his claim, the plaintiff must, if he

wants to avoid the grant of defendant's motion, present evidence that demonstrates the existence of a genuine issue of material fact. Winskunas v. Birnbaum, 23 F.3d 1264, 1267 (7th Cir. 1994) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)). "Indeed, if it is clear that a plaintiff will be unable to satisfy the legal requirement necessary to establish its case, summary judgment is not only appropriate but required." Indiana Funeral Directors, 347 F.3d at 654.

## **ARGUMENT**

Verizon is entitled to summary judgment in its favor because Plaintiff cannot establish that any calls were made after he revoked consent to be called on his cellular telephone, which is a fundamental element of his TCPA claim. Congress enacted the TCPA to address telemarketer calls that it found to be an invasion of consumer privacy. Jamison v. First Credit Servs., Inc., 290 F.R.D. 92 (N.D. Ill. 2011). Though the intent of the TCPA was to curtail abusive telemarketing practices, the statute has been interpreted to apply to debt collectors under certain circumstances. Id. (citing In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 F.C.C.R. 559, 559-60 (2008)). Plaintiff brings his claim under Section 227(b)(1)(A)(iii) of the TCPA, which states:

> (b) Restrictions on use of automated telephone equipment
> (1) Prohibitions
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized

> mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).  To be entitled to recover under this Section, a plaintiff must prove: (1) that a call was made; (2) using an automatic telephone dialing system or artificial or prerecorded voice; (3) the number called was assigned to a cellular telephone service; and (4) the call was not made with the prior express consent of the recipient.[1]  Hanley v. Green Tree Servicing, LLC, No. 12 C 4158, 2013 WL 1189697, at *4 (N.D. Ill. Mar. 21, 2013) (citing Pimental v. Google, Inc., No. 1102585, 2012 WL 691784, at *2 (N.D. Cal. Mar. 2, 2012)); Thrasher-Lyon v. Ill. Farmers Ins. Co., No. 11 C 04473, 2012 WL 983774, at * 3 (N.D. Ill. Mar. 20, 2012).  Here, Plaintiff cannot establish (with competent evidence) that the calls made by Verizon were done without his prior express consent.  Phrased differently, but also fatal to Plaintiff's claims, is the fact that Plaintiff cannot establish that any calls were made after he purported to revoke consent on January 2, 2013.

The TCPA allows for phone calls made to cellular telephones using an autodialer or prerecorded voice when the called party has given "prior express consent."  See 47 U.S.C. § 227(b)(1)(A)(iii).  The Federal Communications Commission, which is the administrative agency charged with enforcement of the TCPA, has stated that "autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party" and therefore, "such calls are permissible."  In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 23

---

[1] To the extent this Court finds that consent is an affirmative defense, rather than an element of Plaintiff's claim, Plaintiff's claims also fail as Verizon seeks summary judgment on its proposed affirmative defense of consent.  Leave was requested on July 31, 2013 to add the affirmative defense of consent.

F.C.C.R. 559, 564 (2008); see also Mitchem v. Ill. Collection Serv., Inc., No. 09 C 7274, 2012 WL 170968, at *1-2 (N.D. Ill. Jan. 20, 2012); Starkey v. Firstsource Advantage, LLC, No. 07-cv-662A(Sr), 2010 WL 2541756, at *3 (W.D. N.Y. Mar. 11. 2010). Therefore, when a consumer provides his cellular telephone number to a creditor, he evidences his express consent to be contacted at that number about the debt. Mitchem, 2012 WL 170968, at *1. Accordingly, when Plaintiff provided his cellular telephone number to Verizon in connection with his account, he gave Verizon consent to contact him for purposes of debt collection. Plaintiff admits as much. (Proposed Findings of Fact ¶ 6.)

Nonetheless, Plaintiff claims that at various times and dates he revoked consent to be called on his cellular telephone. (Id. ¶ 32.) In his First Amended Complaint, Plaintiff claimed that the revocation occurred on November 14, 2012. (Id.) Plaintiff changed the date of revocation in his Responses to Defendant's First Set of Interrogatories, asserting that "on or about December 10, 2012, Plaintiff revoked his consent to be contacted by Defendant on his cellular phone and instructed Defendant to communicate with him via mail only." (Id.) When asked for further clarification, Plaintiff then provided a spreadsheet with "highlighted numbers that are Verizon's," indicating that the "highlighted calls are instances where Mr. Berg spoke with Verizon and requested Verizon to stop calling him." (Id.) The spreadsheet indicates that the first claimed revocation occurred on December 11, 2012. (Id.) At his deposition, Mr. Berg admitted that he was unsure the exact date that he revoked consent and that it might have been December 12, 2012. (Id.) Tellingly, however, Mr. Berg also admitted that he had no proof that he had revoked consent on any of these days. (Id. ¶ 33.)

The evidence is clear that Mr. Berg did not unequivocally revoke consent until January 2, 2013. (Id. ¶ 34.) In fact, each and every one of the telephone calls that Mr. Berg had with Verizon representatives—including the ones during which he claims he revoked consent—was recorded. (Id. ¶ 17.) Mr. Berg posits that he revoked consent by stating "Please stop calling me, you're calling me five, six times a day, please stop" (Id. ¶ 35.) However, each of the calls with Verizon was recorded and in none of the conversations before January 2, 2013 does Mr. Berg make such a statement or anything that could be reasonably interpreted to mean the same thing. In fact, Mr. Berg never informs Verizon to cease contacting him on his cellular telephone using an ATDS. Instead, on December 10, 2012, Mr. Berg asks that Verizon send him a paper bill to confirm his debt. (Id. ¶¶ 21-22.) On December 11, 2012, Plaintiff simply asks how many times a day Verizon is going to call him. (Id. ¶¶ 23-24.) On December 12, 2012, Plaintiff once again requests a paper bill. (Id. ¶¶ 25-26.) On December 13, 2012, Plaintiff informs Verizon that he cannot pay his balance because he has no money and he does not believe he owes an early termination fee. (Id. ¶¶ 27-28.) On December 20, 2012, Mr. Berg does not say anything to the representative who calls him. (Id. ¶¶ 29-30.) Plaintiff admits that these are the only conversations that he had with Verizon. (Id. ¶ 20.) Contrary to his assertions, Plaintiff does not revoke consent in these calls and he does not reaffirm his revocation of consent in subsequent calls. (Id. ¶ 21-30.)

Because Plaintiff admits that he initially consented to be called on his cellular telephone and because no revocation of that consent occurred before January 2, 2013, no call made before that date is in violation of Section 227(b)(1)(A)(iii) of the TCPA. Nonetheless, Plaintiff seeks to recover under his First Amended Complaint for calls that

occurred prior to his revocation of consent on January 2, 2013. These calls, however, do not give rise to a claim under the TCPA. Simply stated, the evidence is clear that Plaintiff failed to revoke his consent until January 2, 2013. In an effort to recover for these calls, Plaintiff has asserted that he revoked consent at "some point in December." However, Plaintiff admits that he does know what date in December the revocation allegedly occurred, he does not have any proof that this revocation occurred and he does not know who he talked to. Despite this claim, Plaintiff admits that the only calls he had are the very ones that are recorded (Proposed Findings of Fact ¶ 20) and these recorded calls do not include any revocation. (See id. ¶¶ 21-30.) Because the recordings unequivocally show that Plaintiff did not revoke consent at any point in December of 2012, he cannot establish a material element to his claim—*i.e.*, that he was called after he revoked his consent. Accordingly, Verizon is entitled to summary judgment in its favor.

## CONCLUSION

Despite repeated assertions that a revocation of consent occurred at some time in December, the evidence is clear that there is no genuine issue of material fact that no such revocation transpired before January 2, 2013. Plaintiff's unclear and equivocal testimony cannot overcome the recordings of every telephone conversation he had with Verizon's representatives; none of which included a revocation. Because these recordings clearly establish that Plaintiff did not revoke consent, no calls were made by Verizon in violation of the TCPA. Accordingly, as a matter of law, Verizon is entitled to judgment on Plaintiff's First Amended Complaint.

WHEREFORE, Defendant Cellco Partnership d/b/a Verizon Wireless respectfully requests that this Court grant its motion for summary judgment and enter judgment in its and against Plaintiff and for any further relief this Court deems equitable and just.

Respectfully submitted,

CELLCO PARTNERSHIP d/b/a
VERIZON WIRELESS

By: /s/ Elizabeth A. Thompson
One of its attorneys

Elizabeth A. Thompson
Arnstein & Lehr LLP, *of counsel*
120 South Riverside Plaza
Suite 1200
Chicago, Illinois 60606
312.876.7100
11109150.1

## CERTIFICATE OF SERVICE

       Elizabeth A. Thompson, an attorney, certifies that on August 5, 2013, she caused the electronic filing of **Verizon's Memorandum in Support of its Motion for Summary Judgment** with the Clerk of Court by using the CM/ECF system, which sent notification of such filing to all parties of record.

/s/ Elizabeth A. Thompson